May it please the Court, Jubin Nasseri for Petitioner Lydia Garcia-Milian. I would like to reserve two minutes of my time for rebuttal. Just watch the clock, Counsel. Thank you, Your Honor. Because the immigration judge found Petitioner credible and the Board of Immigration of Appeals did not disturb that finding, there is no dispute regarding the facts in this case. Petitioner had lived in a common law marital relationship with Noe Garcia from 1985 to 1989. Many years later, between 2001 and 2003, Petitioner noticed masked men in cars following her on many occasions. She was afraid but did not report this to the police. On May 10, 2003, at 11 p.m., Petitioner heard pounding on the door of her home by individuals who identified themselves as police and demanded she open the door. Two masked men in black barged in and demanded to know where her husband was. I think we're familiar with the facts of the case. It seems like the BIA was most concerned about whether there was any imputed political opinion to her. And so what's your argument that there was? Well, Your Honor, we look at the novice case and one of the important things in this case is that the Petitioner, in this matter, when she was asked where her husband was, she gave that information and thereafter, the intruders told the Petitioner that her husband was a member of a guerrilla organization. Novice case gives us guidance in that it states, persecution of account of imputed political opinion may be found where the applicant is a member of a politically active family or where the persecutor's conduct or statements show that they are imputing a particular opinion to their victim. And so what were the statements that were imputing a political opinion to her? Because our standard is whether the BIA and IJ's determination was supported by substantial evidence. Correct. Well, in this case, the BIA didn't even mention novice and they didn't even use the mixed motive analysis. So in this case, she was beaten, she was raped. The intruders told her that her husband was a member of a guerrilla organization. So in that, they are imputing onto the Petitioner the husband's pro-guerrilla political opinion in this case. And that is what we're arguing in this case. And it's important to note that when they, after she had told the guerrilla members, or I'm sorry, after she had told the persecutors of where her husband was, there was no questioning after that. It seems like they believed her and the rape that occurred was more of a punishing factor. But is your position that if there's a statement that a husband or a family member is a member of a guerrilla organization, that that is equivalent to imputing a political opinion of some sort to the white? Is that your position? That is correct, Your Honor. And something important, we don't know what the motive was. We can presume guilt by association, which is what novice is saying. What was, the statement that you read refers to, or were the persecutors conduct? That's correct. Or statements? Conduct or statement, that is correct. So what was it about the conduct here that suggests imputed political opinion? Well, Your Honor, unfortunately in this case, she was beaten and she was raped. And they basically, after they had asked her where her husband was, they didn't question her after that. They basically said that your husband is a guerrilla member, and thereafter they began to beat her and rape her. And from there, we can assume, we can take the conduct and the motives as stated in novice and use that to guide us and we can presume guilt by association. So do you contend that there was an error of law here or just that the evidence was so overwhelming that substantial evidence doesn't support the agency's decision? That's correct. Which is it? We believe that the BIA failed to apply the novice case in this matter and take the facts and they failed to take what happened in this case and apply it to law. And so I think what the question for this Court is whether these horrific traumas which Petitioner suffered were on account of imputed political opinion. The BIA characterized the persecution that Petitioner suffered as a common crime. The Board did not engage in a mixed motive analysis as required by novice. The Board utterly failed to address and consider Petitioner's contention on appeal that these intruders imputed her husband's pro-guerrilla political opinion to her. This much is conceded by the government in its brief. While the government argues that the two masked intruders hit, kicked, raped, and threatened Petitioner with death and forced her to tell them Mr. Garcia's whereabouts rather than because of any imputed political opinion, the record does not support such contentions. The weight of the evidence compels the finding that she was persecuted on account of an imputed pro-guerrilla opinion. It was only after the intruders had obtained what they believed was the information they wanted that they beat, kicked, and raped the Petitioner. This clearly indicates that they were not motivated solely because they wanted to know where Mr. Garcia was, but they also... Did she tell him where he was? She told them that he was in San... her husband was in San Miguel, which is not true. But the intruders did not take that as anything that she was lying. They didn't take that she was lying to them. And they didn't tell her afterwards, well, we know you're lying. They didn't say anything. They began to beat her and rape her. And it was not only till the end they turned to her and said, if we don't find him, we're going to come back and kill you. So there wasn't this continuous threats. Well, was the IJ's determination that the men who attacked her were looking for her husband, was that not supported by substantial evidence? Correct. In other words, there may be evidence of political opinion. I'm not sure I see any here. But all we have to do is determine whether the IJ's determination was supported by substantial evidence. And since the only thing that they asked her expressly was, where is your husband, and then said, and if we don't find him, we'll come back to beat you up some more, why wasn't the IJ's conclusion supported by substantial evidence? The IJ couldn't find... The IJ was focused on, well, these people were just common thugs. This was just as a result of a crime by these thugs. And that's not true. The persecutors in this case specifically told the petitioner, your husband is a member of a guerrilla organization. And the judge, I believe, did not take a look at that statement. He did not apply the novice standard in this case, where we don't have so many facts given to us. We look at conduct and we look at motive. And in this case, we have guilt by association. Thank you, counsel. You're down to about two minutes, if you wish to reserve. Thank you. I want to hear from the government. Good morning, and may it please the court. My name is Jesse Buesen and I represent the Attorney General. In this case, the evidence simply doesn't compel the conclusion that counsel is asserting that Ms. Garcia here was persecuted on account of her imputed political opinion. What more would she have had to have shown from your perspective, from the government's perspective under our case law? Well, in this case, there would simply have to be more evidence. Well, what? Is she stuck with what she says the intruder said to her? Well, all the intruders said to her in this case was that they were looking for her husband, and they said they were looking for her husband because he was a member of a guerrilla group. As the immigration judge found here, there are any number of reasons they may have been looking for the husband. He noted that according to the State Department reports, the guerrilla groups have been involved in a number of criminal activities involved with the gangs there. There's no indication here that they were actually imputing the husband's political opinion to her, particularly where she stated she was never involved with the guerrilla groups and that she had never held any sort of political opinion. She had been affiliated with him, or she had been associated with him? She had been associated with him 15 years prior to the events here. And indeed, she testified they were not formally married. They were a common-law husband and wife for four years, during which time she only ever saw him two days out of the month. She never spoke about politics with him. And from 1989 to 2000 or 2001, nothing happened to her. And here, all we have is, all the evidence shows is that these people were looking for the husband because he was a member of the guerrilla group. There's no evidence to indicate that they were imputing her former spouses, her former common-law spouses' opinions to her. But our case law seems to suggest that, as the counsel pointed out from our case law, that the asylum applicant is not limited just to the words that the attackers might use. That's true, Your Honor, but novice is distinguishable. Novice involved a current husband and wife, where that relationship was current at the time that all of this occurred. I mean, you can look at the conduct as well. I mean, here it was kicking. Well, in this case, as the immigration judge found, the guerrilla groups were frequently involved in criminal activities post the end of the Civil War in Guatemala. And this was simply an act incident to, it was a criminal act. They were looking for the husband because he was a member of the guerrilla group. Why beyond that is not clear from the record. Petitioner doesn't know exactly why they were looking for him. And as the immigration judge found, the record establishes that these people are involved in criminal activities. There is evidence in the record regarding the fact that women are mistreated in the country. And this was simply a criminal act. Any actions they were taking were either for purposes of intimidation or for purposes of simple crime incident to another crime. And there's no evidence here to establish they were imputing any sort of political opinion to her, particularly where she'd had no relationship with her husband in 15 years. She hadn't heard from him. She hadn't spoken to him. They'd had no contact whatsoever. This case is more like this court's decision in Baleno, which involved a woman who claimed that she would be persecuted, and I believe Ethiopia, on account of her ex-husband's political activities there. And the court found in part that there was no evidence to support that, where the relationship was so far back in time, where she was claiming she would go back and be persecuted, but the couple had been divorced in the early 80s. Here, given the length of time that the couple was separated, it's not the same as in Navas, where the couple was still together at that time. Anything further, counsel? If the court has no other questions. No questions. Thank you. Mr. Naseri, you have two minutes of reserve time. Do you have anything to say in response to what you've heard from the government? Yes. It's important to note here in this case, Your Honors, that she had a child by Mr. Noah Garcia. They had a common-law relationship. I think the fact that she never spoke politics to her husband, I believe that's not so relevant here. I believe the government is discounting the Navas case. We need to look at motive here. They wanted to know where Mr. Garcia was, and they persecuted Petitioner because of her association with him and their imputed belief that she shared his political opinion here. I think it's important that even though the IG just found that this was a criminal act, it's important that he look at the entire facts of what happened. She was under surveillance on many occasions for some time, and the fact is also in this case what's important is that the government failed to protect her. They didn't take a police report. They didn't investigate. They didn't look for these criminals. So we know that there was no government intervention here and no protection afforded to Ms. Garcia Millon. I think the fact that she was raped and I think the fact that after she had told the intruders where her husband was, they didn't ask any more questions after they had told her that her husband was a guerrilla member. And I think we know that the government was saying that the guerrilla members often are involved in criminal acts themselves. I think we can't infer that in this case. We don't know what the... Very well. Thank you. Thank you. Thank you very much, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Paez, Ikuta